CHARLES J. SCHUCK, Judge.
The claimant company on or about the 16th day of April 1930, entered into a contract with the state road commission for the excavation and grading of a certain road and project in Greenbrier county and known as project no. 2023. The project contemplated the grading and draining of about 12,880 lineal feet, some concrete work, tibe construction of a small bridge, provision for certain fills and borrow excavations and classified and unclassified excavations of considerable proportions. The larger portion of the borrow was to be *49 taken from hillsides near Caldwell and belonging to the Chesapeake and Ohio Railroad company. Work was begun under the contract on or about the latter part of April 1930, the claimant having theretofore moved certain equipment on the project or job. The claimant continued its work, although interrupted several times on account of disputes between the railroad company and the road commission, until the late fall and winter months, and, finally, on or about February 20, 1931, work was stopped by reason of the said disputes and not resumed for approximately six months, during which time some of the equipment of claimant remained idle on the job and for the rental value of which the claimant principally bases its claim.
Claimant also maintains that this work was stopped by reason of an injunction order on complaint of the Chesapeake and Ohio Railroad but the evidence on this point is not decisive; however, there can be no question that the claimant and the state are in agreement that the work was eventually stopped by order of the state road commission. Subsequently, and before work was resumed, the state road commission relet to another concern certain portions of the work theretofore embraced in the contract entered into with the claimant, and the claimant maintains that this action was a further interference with the performance of its contract with the road commission.
It seems that the chief controversy between the railroad company and the state road commission was the construction of a certain ten foot square concrete viaduct, to be erected along the line of the project and under one of the principal fills to be made along the route of the project. It was nearly six months before the said company and the state road commission arrived at a settlement and work again resumed. These delays were caused not through any fault of the claimant company but by reason of the action of the state road ^commission in not having made a settlement with the railroad company concerning the matters in dispute previous to the time that the contract in question was entered into.
*50 The contract, as first entered into with the claimant, did not contemplate the culvert in question, but contemplated merely the construction and erection of certain pipe under the fill, which was not sufficient, however, so far as the railroad company was concerned, and to which construction the said company would not agree.
Under all circumstances and testimony, then, we are driven to the conclusion that the claimant company was not at fault and undoubtedly suffered losses, not such as are referred to or contemplated by the' terms and provisions of the contract, since it was prevented from doing work at the very season of the year when work could have been carried on with some degree of profit and to the advantage of the claimant company, which it had the right to assume at the time the contract was entered into. The question, however, presents itself as to the measure or amount of damages.
A careful analysis of the testimony of the engineer, Worth-ington, shows that in most respects the contractor received payment for approximately the grading and drainage as set forth in the contract. It is true that while the contract contemplated 26,000 yards of borrow the final estimate showed 18,272; however, the contractor undoubtedly benefited by the overhaul, which contemplated in the first instance but 8,645 yards, and the contractor was finally paid for 140,708 yards, so that in these respects the final estimates balance quite well with the estimates as set forth in the original contract and specifications. We come then to the proposition of the rental value that may be due the contractor by reason of the delay of interferences with the work as hereinbefore set forth, and in this respect there is a marked difference between the testimony submitted by the claimant and that of the engineer Worthington. Among other matters, the claimant maintains that it is entitled to a rental of $300.00 per month for the period in question for each of six trucks, but we believe, taking all the testimony into consideration, that these trucks were easily removable from the project to another which the claimant company had in the same section *51 of the state, if found necessary, and could be returned to the project under consideration on very short notice, and that, therefore, the claimant would not be entitled to the amount asked for with reference to this item. The witness Worthington also testified that the shovel in question for which the claimant asks a thousand dollars per month was not on the project after the beginning of March of the year in question, and this testimony seems to be supported by the claimant, (record p. 160) the witness Tom Cain stating that the equipment in question could have been used on a Monroe county job which was being prosecuted at the time of this delay, and which was in an adjacent county, and that one shovel, seemingly the gas shovel in question here, was used on the Monroe county project.
Considering the evidence as a whole, and bearing in mind the equipment used and the period of time it was probably idle and could not be used elsewhere, we are of the opinion that the sum of fifty-five hundred dollars ($5500.00) would be a fair award to the claimant as damages for the interference with its contract and the delay caused by the controversy between the aforesaid railroad company and the state road commission, and we find in the said amount accordingly.